IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BARBARA J. P.,

                         Plaintiff,

        v.                                          Civil Action No.
                                                    6:24-CV-458 (DEP)

COMMISSIONER OF SOCIAL SECURITY,


                         Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

OFFICE OF PETER ANTONOWICZ      PETER ANTONOWICZ, ESQ.
148 West Dominick Street
Rome, NY 13440

FOR DEFENDANT

SOCIAL SECURITY ADMIN.          VERNON NORWOOD, ESQ.
6401 Security Boulevard         KATHRYN POLLACK, ESQ.
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

        Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on May 22, 2025, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Plaintiff's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that plaintiff was not

---

[1]    This action is timely, and the Commissioner does not argue otherwise.   It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18.   Under those provisions, the court considers the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3)    The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4)    The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:    June 13, 2025
          Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
BARBARA JO P.,

                        Plaintiff,

vs.                                    6:24-CV-458

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------------x

### *DECISION*

held on May 22, 2025 by teleconference

before the HONORABLE DAVID E. PEEBLES

United States Magistrate Judge


APPEARANCES (by telephone)

For Plaintiff:      PETER W. ANTONOWICZ, ESQ.
                    148 West Dominick Street
                    Rome, NY 13440

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of the General Counsel
                    6401 Security Boulevard
                    Baltimore, MD 21235
                      BY:  VERNON NORWOOD, ESQ.


*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

*Decision - 5/22/2025*                                    2

1        THE COURT:  Let me begin by thanking both of you

2   for excellent presentations.

3        Before I address the merits of the case, I wanted

4   to broach the subject of consent.  When this case was

5   originally filed, it was assigned to Magistrate Judge Daniel

6   J. Stewart.  The consent form which was filed on March 22 --

7   it was filed on April 1, 2024, signed on March 22, 2024,

8   docket number 3, specifically consented to his jurisdiction.

9   The matter has since been transferred to me.

10        I wanted to make sure, Attorney Antonowicz, that

11   your client does consent to my hearing and determining the

12   matter with direct appeal to the United States Court of

13   Appeals for the Second Circuit.

14        MR. ANTONOWICZ:  Yes, your Honor.

15        THE COURT:  Thank you.

16        Plaintiff has commenced this action pursuant to 42,

17   United States Code, Section 405(g) to challenge a partially

18   unfavorable determination by the Commissioner of Social

19   Security.  The background is as follows.

20        Plaintiff was born in August of 1965 and is

21   currently 59 years of age.  She was 52 at the alleged onset

22   of her disability on March 15, 2018.  Plaintiff stands 5-foot

23   4-inches in height and has weighed at various times between

24   206 and 276 pounds.  Plaintiff lives in Remsen, New York, in

25   a house with her husband.  Plaintiff has a high school degree

1  and two years of college at Mohawk Valley Community College

2  having achieved an Associate's Degree.  She was in regular

3  classes while in school.  Plaintiff drives.  Plaintiff

4  stopped working on March 5, 2018.  When working she was a

5  cable television technician from August of 1996 until March

6  of 2018.

7          Physically, plaintiff suffers from lumbar back

8  pain, leg pain, tremors, high blood pressure, diabetes,

9  obesity, and vision impairment.  The diabetes is Type 2

10  diabetes.  Plaintiff injured her back at work on March 5,

11  2018 and went out on Workers' Compensation.  She has also had

12  right shoulder surgery in October of 2016, eye surgery in

13  April of 2017.  And I note that Dr. Kirkpatrick on May 10,

14  2018 noted that plaintiff suffers from a 25 percent loss of

15  her right arm.  She has undergone various testing of her

16  back, including an X-ray on March 13, 2018 which revealed

17  mild degenerative arthritic spurring of the lumbar spine, an

18  EMG and nerve conduction study on September 27, 2018 that

19  showed evidence of an active bilateral L5 radiculopathy, an

20  MRI on March 22, 2019 that showed that the very slight

21  degenerative changes as enumerated above are stable since the

22  previous examination, no new central or neural foraminal

23  stenosis, and another EMG, a nerve conduction study on

24  November 21, 2019, again showing evidence of chronic

25  bilateral L4 and L5 radiculopathy, an MRI on June 11, 2020,

*Decision - 5/22/2025*                                        4

1   showing no fracture but mild to moderate spondylosis of the

2   lumbar spine and disc herniation of the L5/S1 without canal

3   stenosis, nerve conduction study, and an EMG on December 16,

4   2020, showing electrophysiological evidence of chronic

5   bilateral radiculopathy, and an MRI of the lumbar spine on

6   June 3, 2021, revealing subtle sub-ligamentous protrusion at

7   L5/S1.

8          The plaintiff has a fairly wide range of daily

9   activities.  She showers three times a week, can dress,

10  groom, watches television, she gardens, she shops with her

11  husband every two weeks, does some dusting, some laundry one

12  time a week.  She does some cooking five to six times a week.

13  That's at 1087 of the Administrative Transcript.  She sews,

14  she walks, she swims, she walks her dog.  She does state on

15  August 18, 2021, that she walks daily.  At 1485 it indicates

16  she can walk a half mile.  At 523 there is an indication that

17  she feels like she can walk one mile but only stand for 15

18  minutes.  That's on May 10, 2018 that statement was made,

19  578.  The record is a little equivocal as to whether or not

20  she rides a motorcycle and, if so, how often.  At 332 and 316

21  she states she cannot.  At 1312 there was an indication she

22  has difficulty with tremors and shifting gears.  She also

23  does outdoor photography, that's at 645 of the Administrative

24  Transcript.

25          Procedurally, plaintiff applied for Title II

1   benefits protectively on December 2, 2020, alleging an onset

2   date of March 5, 2018.  At 298 she alleged disability based

3   on bulging disc at L5/S1, nerve pain, carpal tunnel syndrome,

4   high blood pressure, Type 2 diabetes, and altered depth

5   perception.  A hearing was conducted on February 15, 2023 by

6   Administrative Law Judge Elizabeth Koennecke to address

7   plaintiff's application for benefits.  A second hearing was

8   conducted with a vocational expert on April 17, 2023 by ALJ

9   Koennecke.  An unfavorable decision -- I'm sorry, a partially

10  favorable decision was issued on April 27, 2023, finding that

11  plaintiff was disabled beginning August 25, 2020, but not

12  before.  On January 31, 2024 that decision became a final

13  determination of the Agency, when the Social Security

14  Administration Appeals Council denied plaintiff's request for

15  review.  This action was commenced on April 1, 2024, and is

16  timely.

17        In her decision, ALJ Koennecke applied the familiar

18  five-step sequential test for determining disability.  She

19  noted that plaintiff had not engaged in substantial gainful

20  activity since March 5, 2018.  She also noted in passing that

21  plaintiff has an insured status or did through December 31,

22  2023.

23        At step two, she concluded that plaintiff does

24  suffer from severe impairments that place more than minimal

25  limitations on her ability to perform work functions,

1  including obesity and degenerative disc disease of the lumbar

2  spine.  She rejected several other conditions including her

3  right shoulder, high blood pressure, glaucoma, diabetes, hand

4  and finger tremors, and carpal tunnel syndrome as not being

5  severe within the meaning of the Social Security Act.

6            At step three, ALJ Koennecke concluded that

7  plaintiff's conditions do not meet or medically equal any of

8  the listed presumptively disabling conditions set forth in

9  the Commissioner's regulations, specifically considering

10 listings 1.15 and 1.16.  The ALJ went on to formulate a

11 residual functional capacity, or RFC, finding that plaintiff

12 is capable, notwithstanding her impairments, of performing

13 light work as defined in the regulations except she can lift

14 25 pounds, carry 15 pounds, and perform no standing for more

15 than 15 minutes continuously, no walking for more than 0.1

16 miles continuously, no pushing more than 35 pounds, no

17 pulling more than 25 pounds, no balancing activities that

18 require walking, and no crouching, stooping or crawling on

19 hands and feet.

20           At step four, applying that RFC ALJ Koennecke noted

21 that plaintiff is incapable of performing her past relevant

22 work as a cable television technician because it was

23 performed at the heavy exertional level.

24           At step five, ALJ Koennecke noted that plaintiff

25 was closely approaching advanced age and transitioned to

1   advanced age on August 25, 2020, and that under the

2   Medical-Vocational Guidelines, or the so-called grids, that

3   would direct a finding of disability after that date.

4           For the period prior to that date, ALJ Koennecke

5   found that plaintiff is capable of performing available work

6   in the national economy relying on the testimony of a

7   vocational expert who cited as examples office helper, ticket

8   taker, and garment sorter.  The grid rule that applied

9   subsequent to August 25, 2020 is Grid Rule 202.06.

10          As you all know or you both know, the Court's

11  function in this case is limited to determining whether

12  correct legal principles were applied and the resulting

13  determination is supported by substantial evidence, which has

14  been described by the Second Circuit as an extremely

15  stringent standard.  Substantial evidence means such

16  admissible and relevant evidence as a reasonable mind would

17  find sufficient to support a conclusion.  *Brault v. Social*

18  *Security Administration Commissioner*, 683 F.3d 443.  That

19  standard was later reiterated in *Schillo v. Kijakazi*, 31

20  F.4th 64 from 2022.

21          The contentions in this case by the plaintiff are

22  twofold.  She challenges the evaluation by the Administrative

23  Law Judge of her reported symptoms and resulting limitations.

24  And secondly, she challenges the evaluation of the medical

25  opinion evidence in the record.  I note that because of the

1    partially favorable determination, the relevant period in

2    this case is March 5, 2018 to August 24, 2020.  As a backdrop

3    I also note that it is plaintiff's burden through step four

4    to establish her limitations.  *Poupore v. Astrue*, 566 F.3d

5    303, Second Circuit 2009.

6              The first issue I want to address is evaluation of

7    medical opinions.  In this case because the plaintiff's

8    application for benefits was filed after March 27, 2017, the

9    case is subject to amended regulations which took effect for

10   applications filed after that date, under which the

11   commissioner no longer defers to or gives any specific

12   evidentiary weight, including controlling weight, to any

13   medical opinions including those from medical sources, but

14   instead considers whether those opinions are persuasive by

15   primarily considering whether they are supported by and

16   consistent with the record in the case.  20 C.F.R. Section

17   404.1520(c).  Importantly, an ALJ must articulate in his or

18   her determination as to how persuasive he or she finds all of

19   the medical opinions and explain how he or she considered the

20   supportability and consistency of those opinions.  In that

21   description an articulation must be sufficient to permit

22   meaningful judicial review.  I also note as on aside where

23   there is conflicting medical evidence in the record, in the

24   first instance it is for the Administrative Law Judge to

25   resolve any conflicts.  *Veino v. Barnhart*, 312 F.3d 578 from

*Decision – 5/22/2025*                                              9

1    2002.

2           The first opinion in the record is from a nurse

3    practitioner whose name is illegible.  It appears at 595 of

4    the Administrative Transcript.  It is dated April 17, 2018,

5    which is shortly after plaintiff's alleged injury.  It

6    indicates the nature of injury, low back pain with right

7    sciatica.  It limits plaintiff to lifting not more than

8    20 pounds, which is somewhat inconsistent with the RFC.

9    Significantly, it also indicates, quote, "She cannot climb

10   ladders.  The ladder restriction is permanent because she has

11   altered depth perception in the right eye."  There is a

12   discussion of this opinion at page 21 of the Administrative

13   Transcript.  The opinion was found not persuasive because,

14   one, it was rendered shortly after the claimant reported the

15   injury; two, it was not entirely supported by her subsequent

16   treatment notes; and three, it was inconsistent with the

17   functional capacity examination which we'll discuss shortly.

18          I find that there is error because there was

19   absolutely no discussion as to why the climbing ladder

20   restriction should not be included in the RFC.  It's

21   indicated here that it is permanent.  Plaintiff claimed

22   disability based on an altered depth perception and did have

23   surgery on her eyes.  However, I also find that the error is

24   harmless.  According to the Dictionary of Occupational

25   Titles, the positions of ticket taker, which is 344.667-010,

1   and office helper 239.567-010, and garment sorter 22.6877-014

2   all involve no climbing.  Under climbing they all indicate

3   not present, activity or condition does not exist.

4          So while I find error, I find that that particular

5   error was harmless.

6          The next opinion discussed by ALJ Koennecke is from

7   Dr. Kevin Scott.  It was in the form of an independent

8   medical examination made obviously under auspices of the

9   Workers' Compensation case.  It appears at 644 to 647 of the

10  Administrative Transcript and it occurred or is dated

11  September 12, 2018.  In it Dr. Scott indicates the following:

12  Her, meaning plaintiff, temporary work restrictions is she is

13  capable of working but in a sedentary capacity.  No pushing,

14  pulling or lifting over 10 pounds.  She needs to sit/stand as

15  needed.  At this time I do not know how long the restrictions

16  will be for.  The opinion was discussed by the ALJ at pages

17  21 to 22 and found not persuasive.

18         I would agree with the Administrative Law Judge

19  that because it is specifically opining on a temporary basis,

20  it is probably not persuasive.  However, the other part of

21  the rationale that it was somewhat supported by examination

22  findings but inconsistent with the totality of the record in

23  my view is insufficient to allow for a meaningful judicial

24  review.  There is no indication of in what manner it's

25  inconsistent with the record and what parts of the record

1   would be contrary to the opinion.

2          There is a reference by the Administrative Law

3   Judge to a functional capacity evaluation by a Therapist

4   Raymond Alessandrini.  It is not in the record.  There's no

5   explanation for why it is not.  It is referenced several

6   times in the record, including 787 and 1219.  It does seem to

7   support the RFC but the report is not available.  There's no

8   meaningful discussion as to how Dr. Scott's opinion differs

9   from the functional capacity evaluation and prevents

10  meaningful judicial review.  I find that that is error.

11         The next opinion is a series of opinions from

12  Dr. Richard Mutty, again who conducted an independent medical

13  examination of the plaintiff.  The first occurred on April 2,

14  2019.  It appears in the record at 648 to 652.  And it limits

15  plaintiff to light work activity, with the 10 pound weight

16  lifting on an occasional basis.  That's page 651.

17         The second is from December 11, 2019, and it

18  appears at 659 to 665.  It limits plaintiff to occasional

19  lifting 10 pounds and occasional pushing and pulling 20

20  pounds, occasional standing and occasional walking, and never

21  climbing, kneeling or bending.

22         The third is from December 29, 2019 and it's at 656

23  to 657.  It indicates:  At the time of my prior examination,

24  I felt that her degree of disability was moderate to marked,

25  and since there has been no change in my recent examination

1   of December 10, 2019, it is felt that at the time of that

2   examination her degree of disability would still be

3   considered moderate to marked.

4          The opinions are discussed together at page 22 of

5   the Administrative Transcript and found not to be persuasive.

6   The reasons given are as follows:  Although they were

7   somewhat supported by examination findings, they were not

8   consistent with the totality of the record, including the

9   claimant's activities, the objective medical evidence, or her

10  functional capacity examination.  Once again, I find that

11  discussion to be deficient and does not permit meaningful

12  judicial review because it does not provide any specifics.

13         The Administrative Law Judge next went on to

14  reference the functional capacity evaluation of Raymond

15  Alessandrini that occurred on apparently March 23, 2020.  As

16  I indicated, it does not appear on the record; it is,

17  however, referenced at several locations including 787, 1108,

18  1219 and 1113.  It tracks the residual functional capacity as

19  discussed at page 22 and found to be, quote, "most

20  persuasive."  The various references indicate the following

21  regarding that examination, quote, "Ms. Palm is capable of

22  assuming a position in the medium strength category.  Her

23  maximum lifting capacity is 25.0 pounds, and her maximum

24  carrying capacity is 15.0 pounds.  According to the

25  Dictionary of Occupational Titles, the medium strength

1  category is defined as having the ability to lift 20 to

2  50 pounds and carry 10 to 25 pounds.  She would have to

3  follow the following restrictions:  No standing for more than

4  15 minutes continuously, no walking for more than 0.1 miles

5  continuously, no pushing more than 35 pounds, no pulling more

6  than 25 pounds, no balancing activities that require walking,

7  no crouching/stooping/crawling on hands and feet."  The

8  opinion's found to be the most persuasive because it is

9  supported by actual testing, which is not in the record, and

10  generally consistent with other evidence of the record,

11  including negative objective medical evidence and the

12  claimant's activities as noted above, including the ability

13  to ride a motorcycle.

14          Once again, we have little information as to the

15  extent of the motorcycle riding and I don't find this is a

16  sufficient explanation to allow for meaningful judicial

17  review.  We don't know anything about the testing, the report

18  of the testing that was done by this individual on a one-time

19  basis apparently and so in my view it's of very limited

20  value.

21          The next opinion is from Dr. Lee Saltzgaber.  It

22  was dated March 8, 2021.  It appears at 1086 to 1092 of the

23  Administrative Transcript.  It was a consultative examination

24  arranged by the Agency.  The medical source statement

25  contained in that report is as follows:  The claimant will

*Decision – 5/22/2025*                                          14

1   have moderate limitations for prolonged sitting, standing,

2   walking, climbing stairs, lifting and carrying, reaching, and

3   handling.

4          There is a discussion of this opinion at page 22 of

5   the Administrative Transcript as found to be somewhat

6   persuasive but the reaching and handling limitations were

7   found not to be supported by treatment history and

8   activities.  The sitting, reaching, and handling limitations

9   were inconsistent with other opinions of record.  This is

10  supported by her ability to go to a gun range and shoot a

11  gun.  Once again, I find that we do not know the extent of

12  reaching involved in shooting the gun.  I think this is a

13  deficient explanation.

14          I note that plaintiff has had shoulder injury and

15  surgery.  Dr. Kirkpatrick at 641 indicated 25 percent loss of

16  use of the right arm.  Dr. Saltzgaber found moderate

17  limitation in reaching.  And as we will see in a moment, the

18  prior administrative medical findings of Dr. Baronos and

19  Dr. D. Brauer also indicate limitations in reaching, which

20  brings me to those opinions.

21          The first is the opinion of Dr. V. Baronos from

22  April 7, 2021.  The prior administrative medical finding

23  appears at page 66 through 81 of the Administrative

24  Transcript.  It is discussed at pages 22 to 23 of the

25  Administrative Transcript and found to be somewhat

*Decision - 5/22/2025*

1   persuasive.  It is clear and I acknowledge that prior

2   administrative medical findings can supply substantial

3   evidence supporting the determination.  *Valdese-Capezio*

4   *versus Kijakazi*, 2023 WL 3573761, Second Circuit Court of

5   Appeals, 2023.  The second is an opinion from Dr. D. Brauer

6   from June 23, 2021.  It appears at pages 82 through 104, and

7   they're lumped together pretty much at pages 22 and 23 by the

8   Administrative Law Judge and found to be somewhat persuasive.

9   Significantly.  Both of those contain limitations on

10  reaching.

11          Dr. Baronos's report at page 75 indicates reaching

12  in any direction limited, left in front and/or laterally,

13  left overhead.  And the explanation given is as follows:  Due

14  to limited range of motion of the left shoulder associated

15  with arthroscopy of the left shoulder completed in 2016, the

16  claimant is limited to occasional overhead and in front

17  and/or lateral reaching using the left arm as well as

18  occasional gross manipulation using the left arm.

19          Similarly, Dr. Brauer at page 97 contains a similar

20  limitation and bases it on Dr. Saltzgaber's opinion,

21  consultative opinion, showing moderate limitations for

22  reaching, and also indicates similarly due to limited range

23  of motion of the left shoulder associated with arthroscopy of

24  the left shoulder completed in 2016, the claimant is limited

25  to occasional overhead and in front and/or lateral reaching

*Decision - 5/22/2025*                                          16

1   using the left arm as well as occasional gross manipulation

2   of the left arm.

3            I find that the -- and I'll note that there is no

4   indication in the reports of the functional capacity

5   evaluation of Therapist Alessandrini, there is no indication

6   that it speaks to plaintiff's ability to reach.

7            So, in conclusion, I find insufficient explanation

8   for rejection of the partial -- or, partial rejection of the

9   nurse practitioner's opinion concerning climbing and the

10  opinions of Dr. Scott and Dr. Mutty regarding lifting, and

11  insufficient explanation for rejecting the reaching

12  limitation opined by Dr. Saltzgaber, Dr. Baronos and

13  Dr. Brauer.  And I note that according to the Dictionary of

14  Occupational Titles all three of the positions cited by the

15  vocational expert in this case require frequent reaching.  I

16  know that the Second Circuit has said that in *Camille v.*

17  *Colvin*, 652 F.App'x 25 from 2016, that when the regulations

18  regarding the evaluation of medical opinions are not

19  specifically followed and in the decision does not articulate

20  clearly supportability, consistency analyses, if a searching

21  record -- if a searching review of the record indicates that

22  the medical opinion regulations were followed, then the

23  decision can be upheld.  I don't find that to be the case

24  here.  I think that the discussion of the opinion evidence in

25  this case is woefully deficient and does not permit

*Decision – 5/22/2025*                                        17

1   meaningful judicial review, and I further indicate and find

2   that there were errors committed and matters were not

3   included in the RFC that should have concerning climbing and

4   reaching.

5        So, in conclusion, I'll grant judgment on the

6   pleadings to the plaintiff.  I don't find persuasive evidence

7   of disability during the relevant period that we've been

8   discussing, and I think the matter should be returned for a

9   fuller analysis of the record opinion evidence and, if

10  possible, someone should try to obtain and include in the

11  record the functional capacity evaluation report by the

12  Therapist Raymond Alessandrini.

13       Thank you both for excellent presentations.  I hope

14  you have a good day.

15                  *            *            *

16

17

18

19

20

21

22

23

24

25

Decision - 5/22/2025                    18

1

2

3                C E R T I F I C A T I O N

4

5        I, EILEEN MCDONOUGH, RPR, CRR, Federal Official

6  Realtime Court Reporter, in and for the United States

7  District Court for the Northern District of New York,

8  do hereby certify that pursuant to Section 753, Title 28,

9  United States Code, that the foregoing is a true and correct

10  transcript of the stenographically reported proceedings held

11  in the above-entitled matter and that the transcript page

12  format is in conformance with the regulations of the

13  Judicial Conference of the United States.

14

15

16

17        _____
                  *Eileen McDonough*

18        EILEEN MCDONOUGH, RPR, CRR
          Federal Official Court Reporter

19

20

21

22

23

24

25